Case 1:08-cv-03592   Document 1   Filed 06/23/2008   Page 1 of 2

FILED: JUNE 23, 2008
08CV 3592
JUDGE KOCORAS
MAGISTRATE JUDGE COLE
EDA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br>      Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| THOMAS PENNIE,<br>      Defendant. | )<br>)<br>) |

**PENNIE'S NOTICE OF REMOVAL TO THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

Now comes Defendant, Thomas Pennie ("Pennie"), by and through one of his attorneys, Robert W. Gray and Ralph J. Schindler, Jr. of the Law Offices of Ralph J. Schindler, Jr., pursuant to 28 U.S.C. §1441, and files this Notice to Remove the state court action filed by Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"), on the grounds of diversity jurisdiction, 28 U.S.C. §1332. In furtherance thereof, Pennie states:

1. On or about March 27, 2007, Pennie filed a Complaint against United Parcel Service ("UPS") for, amongst other things, Title VII violations in the employment context. Liberty Mutual is UPS's insurance carrier. That case is currently pending before the Honorable Judge Rebecca Pallmeyer and is assigned No. 07 CV 1596. A true and correct copy of the cover sheet for that related case is attached as Exhibit A.

2. On or about March 25, 2008, UPS filed a counterclaim against Pennie alleging common law fraud.

3. On the same date, Liberty Mutual filed an identical Complaint in the Cook County Circuit Court, *Liberty Mutual Insurance Co v. Pennie*, No. 2008 L 004916, claiming itself to be the injured party instead of UPS. A true and correct copy of the Complaint is attached hereto as Exhibit B.

4. On or about May 27, 2008, Liberty Mutual served a copy of the Complaint on Defendant Pennie.

5. Though not identified in Liberty Mutual's Complaint, on information and belief, Liberty Mutual is domiciled in Massachusetts.

6. Pennie is an individual domiciled in Illinois.

7. In the Complaint, Liberty Mutual seeks recovery for at least $112,000, an amount in excess of the requirements of 28 U.S.C. §1332. (Exhibit B, ¶ 35).

WHEREFORE, because there is complete diversity between the parties and the amount in controversy, from the face of the Complaint, exceeds the statutory minimum, Pennie requests this Court Remove the case filed against him in the Circuit Court of Cook County and join this case to the action pending before the Honorable Judge Pallmeyer as a related case.

Respectfully Submitted,

/s/ Ralph J. Schindler, Jr.

Ralph J. Schindler, Jr.
One of the Attorneys for
Thomas Pennie

The Law Offices of Ralph J. Schindler
Attorney No. 2484471
53 W. Jackson Blvd., Suite 818
Chicago, Illinois 60604
(312) 554 - 1040

08CV 3592
JUDGE KOCORAS
MAGISTRATE JUDGE COLE
EDA

# EXHIBIT A

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**
THOMAS PENNIE

**DEFENDANTS**
UNITED PARCEL SERVICE, INC., an Ohio corporation

KC **FILED**
MAR 2 2 2007
03-22-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Eugene K. Hollander, The Law Offices of Eugene K. Hollander, 33 N. Dearborn St., Suite 2300, Chicago, IL 60602. Tel: 312-425-9100

Attorneys (If Known)

07CV1596
JUDGE PALLMEYER
MAGISTRATE JUDGE BROWN

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [■] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENS** (For Diversity C...)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This ... | | | | | |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane / 362 Personal Injury— Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability / 365 Personal Injury — Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander / 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | PROPERTY RIGHTS | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine / PERSONAL PROPERTY | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (excl. vet.) | 345 Marine Product Liability / 370 Other Fraud | 660 Occupational Safety/Health | 840 Trademark | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / 371 Truth in Lending | 690 Other | | 490 Cable/Satellite TV |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | 810 Selective Service |
| 190 Other Contract | 360 Other Personal Inj. / 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 850 Security/Commodity/Exch. |
| 195 Contract Product Liability | | 720 Labor/Mgmt. Relations | 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| 196 Franchise | | | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | 730 Labor/Mgmt.Reporting & Disclosure Act | 864 SSID Title XVI | 892 Economic Stabilization Act |
| 210 Land Condemnation | 441 Voting / 510 Motions to Vacate Sentence | 740 Railway Labor Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 220 Foreclosure | [■] 442 Employment / Habeas Corpus: | | FEDERAL TAX SUITS | 894 Energy Allocation Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations / 530 General | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 240 Torts to Land | 444 Welfare / 535 Death Penalty | | | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 245 Tort Product Liability | 445 ADA—Employment / 540 Mandamus & Other | 791 Empl. Ret. Inc. Security Act | 871 IRS—Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 ADA — Other / 550 Civil Rights | | | 890 Other Statutory Actions |
| | 440 Other Civil Rights / 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- [■] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

42 U.S.C. Sec. 12101, 42 U.S.C. Sec. 2000(e)-2

**VII. PREVIOUS BANKRUPTCY MATTERS** (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary)

**VIII. REQUESTED IN COMPLAINT:**
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: [■] Yes [ ] No

**IX. This case** [■] is not a refiling of a previously dismissed action.
[ ] is a refiling of case number _____, previously dismissed by Judge _____

DATE: March 22, 2007

SIGNATURE OF ATTORNEY OF RECORD
Eugene Hollander

#2

# EXHIBIT B

```
08CV 3592
JUDGE KOCORAS
MAGISTRATE JUDGE COLE
EDA
```

Case 1:08-cv-03592   Document 1-3   Filed 06/23/2008   Page 1 of 9

JFB/ln  Firm I.D. 36250

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT – LAW DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. |
| ) | |
| THOMAS PENNIE, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR FRAUD

NOW COMES the Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY (hereinafter "LIBERTY MUTUAL"), by and through its attorneys, LAW OFFICES OF LAUREN K. MEACHUM, and for its complaint for fraud directed against the Defendant, THOMAS PENNIE (hereinafter "PENNIE"), states as follows:

### GENERAL ALLEGATIONS

1. Pennie was employed by United Parcel Service, Inc. ("UPS") as a package car driver between 1995 and May 2003. Pennie has also resided in Illinois at all relevant times and continues to reside in Illinois.

2. UPS is an Ohio Corporation doing business in Illinois.

3. Liberty Mutual is the insurance company responsible for workers' compensation claims made against UPS in Illinois. In this capacity, Liberty Mutual defends and administers UPS's workers' compensation matters in Illinois.

4. In 2001, Pennie claimed to have injured his back while performing his package car driver job for UPS. Pennie subsequently filed claims with the Illinois Industrial Commission for these injuries.

5. On or about November 21, 2001, Penne presented UPS with documentation from his physician stating that Pennie could return to work on December 10, 2001 with the following restrictions: no lifting more than thirty (30) pounds; minimal lifting; minimal twisting; and minimal bending.

6. Pennie's work restrictions were incompatible with his package car driver job, which requires the ability to lift packages weighing up to seventy (70) pounds and to assist with lifting packages weighing up to 150 pounds. Pennie's package car driver job also requires significant lifting, twisting and bending.

7. As Pennie could not perform his package car driver job, he was initially given temporary alternate work consistent with his restrictions.

8. On or about December 21, 2001, Pennie presented UPS with documentation from the same physician after a follow-up visit. This documentation again stated that Pennie could only work if he had a thirty (30) pound lifting restriction and was restricted to occasional bending, twisting and lifting.

9. In January 2002, Pennie's temporary alternate work period expired with Pennie still unable to perform the essential job functions of his package car driver job. Pennie was thereafter placed on a leave of absence and began collecting Temporary Total Disability ("TTD") benefits based on his claimed inability to perform the essential job functions of his package car driver position.

10. On or about February 13, 2002, Pennie's physician prescribed work restrictions based on a recent functional capacity evaluation. This was Pennie's final examination by the physician, who released Pennie from his care and advised that Pennie need only return on an "as needed" basis from that point forward. The final restrictions

from the physician included a 25 pound lifting restriction for any lifting above Pennie's knuckle or mid-thigh and a 35 pound lifting restriction for carrying packages a distance of between 0 and 20 feet

11. Pennie knew the lifting restrictions were wrong. Pennie believed he could return to his package car driver position without any lifting restrictions.

12. Despite knowing he was capable of returning to work without any restrictions, Pennie presented UPS with the February 13, 2002 documentation providing for a 25 pound lifting restriction. Pennie did not tell either UPS or Liberty Mutual that the restrictions were incorrect and that he could actually return to work without any restrictions.

13. Pennie knew that he would not be returned to his package car driver job with a 25 pound lifting restriction. Knowing this, Pennie intentionally gave UPS the incorrect working restrictions and concealed his real condition in order to deceive UPS and Liberty Mutual into allowing him to remain on a leave of absence and collect TTD benefits to which he was not entitled.

14. Pennie thereafter collected TTD benefits for another 15 months despite the fact that he was able to return to work without any restrictions for this entire period of time. Throughout this 15 month period, Pennie never corrected the false working restrictions he provided to UPS and Liberty Mutual. Moreover, Pennie intentionally concealed his ability to return to work for the entire 15 month period so that he could continue to collect TTD payments to which he was not entitled.

15. UPS and Liberty Mutual detrimentally relied upon Pennie's misrepresentation that he could not return to work without a 25 pound lifting restriction

and his concealment of his ability to return to work. Had UPS or Liberty Mutual known that Pennie was able to return to his job without any restrictions, they would have required him to return to work. They also would not have allowed Pennie to continue to collect TTD payments.

16. Neither UPS nor Liberty Mutual were aware of Pennie's fraud regarding TTD payments prior to Pennie's February 2008 deposition in another lawsuit.

17. During the 15 month period that Pennie collected TTD benefits, Pennie's attorney of record sent a letter to Liberty Mutual asserting that UPS was liable for a wage differential claim under section 8(d)(1) of the Illinois Workers' Compensation Act since Pennie's lifting restriction left him unable to return to work at UPS. Pennie's attorney proposed that the parties settle this wage differential claim. This letter was sent in May 2002, two months after Pennie gave UPS and Liberty Mutual the incorrect working restrictions.

18. A "wage differential" under Section 8(d)(l) of the Illinois Workers' Compensation Act is an award of compensation to an employee who is permanently unable to return to his prior employer and/or occupation due to his or her injury and must accept a lower paying position elsewhere. The employee is compensated for the difference between what he or she would have earned for the prior employer and is expected to earn over the course of his or her working lifetime.

19. Based on the false working restrictions provided by Pennie, Pennie's concealment of his true condition and his attorney's correspondence, UPS and Liberty Mutual were induced into a wage differential settlement with Pennie wherein Pennie was compensated for the difference between what he would have been able to earn working

for UPS in his lifetime and what he was expected to earn working in a lower paying job for another employer. The amount of the settlement was $112,000.

20. If UPS and Liberty Mutual had known that Pennie was capable of returning to his package car driver job without any restrictions, they would not have entered into a wage differential settlement with Pennie. Indeed, there would have been no need to enter into such a settlement since the parties would have required Pennie to return to work and he would have continued to earn his UPS wages for the foreseeable future.

21. Pennie knew that UPS and Liberty Mutual believed, based on his prior representation, that he could not return to work without a 25 pound lifting restriction. Pennie intentionally concealed his ability to return to his package car driver job without any restrictions in order to induce UPS and Liberty Mutual into a wage differential settlement wherein he would receive a larger sum.

22. Pennie and his attorney signed the settlement agreement, which expressly stated that it was a settlement under section 8(d)(1) of the Act. In signing this settlement and accepting the benefits, Pennie implicitly represented that he was unable to return to work at UPS. Pennie knew this was not true at the time he signed the settlement agreement.

23. Pennie's misrepresentation was a material fact intended to induce UPS and Liberty Mutual to sign the settlement agreement and for the Illinois Industrial Commission to approve the settlement agreement, which it did on May 15, 2003.

24. On or about May 23, 2003, Pennie received his first payment under the settlement and cashed the check within one to two days thereafter.

25. On May 27, 2003, a few days later, Pennie reported to UPS and claimed he was capable of returning to work. That same day, Pennie went to a Dr. Murray and reported to the doctor that he was pain free and capable of returning to his package car driver job. Based on this, the doctor released Pennie to return to work with no restrictions.

26. Between February 13, 2002 and May 27, 2003, Pennie never sought out a physician to report he was pain free and capable of returning to work. It was only after the settlement was approved and Pennie cashed his settlement check that he sought out a physician and attempted to return to work.

27. Prior to May 27, 2003, Pennie never informed either UPS or Liberty Mutual that he was pain free and capable of returning to his package car driver job.

28. As the insurance company responsible for UPS's workers' compensation matters, Liberty Mutual paid Pennie the TTD benefits and wage differential amounts which were fraudulently obtained by Pennie.

## COMMON LAW FRAUD

29. Liberty Mutual adopts and realleges paragraphs 1 through 28 above as though fully set forth herein.

30. As set forth herein, Pennie made a misrepresentation of a material fact when he told UPS he could not return to work without a 25 pound lifting restriction when he knew he could return to work without any restrictions. In making this misrepresentation, Pennie intended to deceive UPS and Liberty Mutual into paying him TTD benefits to which he was not entitled.

31. After making this misrepresentation, Pennie concealed his ability to return to work without any restrictions because he intended to deceive UPS and Liberty Mutual into continuing to pay him TTD benefits and to create a wage differential claim and/or obtain a large wage differential settlement. Pennie was not entitled to either the TTD benefits or the wage differential settlement.

32. Pennie also committed fraud when he signed a settlement which was premised on his claimed inability to return to his package car driver job and purported to pay him the difference in wages between what he would have earned at UPS and would earn at other employers for the duration of his working lifetime.

33. Pennie knew that UPS and Liberty Mutual believed his prior misrepresentation regarding a 25 pound lifting restriction and were unaware of his ability to return to work without any restrictions. Pennie further knew that UPS and Liberty Mutual would not continue to pay him TTD benefits or enter into a wage differential settlement if he told them he was capable of returning to his package car driver job without any restrictions.

34. UPS and Liberty Mutual would not have paid Pennie the 15 months of TTD benefits that he wrongly obtained if they had known that he was capable of returning to work without any restrictions. Nor would they have entered into a wage differential settlement if not for Pennie's affirmative acts of fraud and his concealment of his ability to return to work.

35. As a result of Pennie's fraud, UPS and Liberty Mutual have suffered considerable loss and damage, including, but not limited to, 15 months of TTD payments, the $112,000 settlement amount and attorneys' fees.

36. The Defendant is liable for common law fraud in that he committed the following acts:

   a. Defendant made false statements of material fact as set forth above;
   b. Defendant knew or believed the statements to be untrue;
   c. Plaintiff had a right to rely on the statements;
   d. Plaintiff did rely on the statements;
   e. Defendant made the statements for the purpose of inducing the Plaintiff to make the TTD payments and enter into the wage differential settlement; and
   f. Plaintiff has suffered injury because of its reliance on the Defendant's statements.

WHEREFORE, LIBERTY MUTUAL prays that this Court:

   a. Order Pennie to reimburse Liberty Mutual for any and all TTD benefits received by him from February 2002 through May 2003;

   b. Vacate and rescind the May 15, 2003 settlement as fraudulent and order Pennie to repay to Liberty Mutual all sums received by him and his attorney as a result of the settlement;

   c. Award Liberty Mutual its costs and expenses, including attorney's fees, incurred in bringing this complaint as well as incurred in addressing Pennie's workers' compensation claim between February 2002 and May 2003;

   d. Award Liberty Mutual punitive damages;

   e. Award Liberty Mutual pre and post judgment interest; and

   f. Award Liberty Mutual any other legal and equitable relief to which it is entitled.

   g. Over $50,000.

_____
JOHN F. BOYLE

Law Offices of Lauren K. Meachum
10 S. LaSalle Street, Suite 2800
Chicago, Illinois 60603
(312) 726-6317
Firm I.D. 36250